## Richmond

FRANK PAULSON, TRADING AS PENINSULA CONSTRUCTION COMPANY, AND AETNA CASUALTY AND SURETY COMPANY V. HAJOCA CORPORATION.

January 16, 1961.

Record No. 5176.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and l'Anson, JJ.

The opinion states the case.

*Edward A. Marks, Jr. (Frank Pitchford; Alexander H. Sands, Jr.; Sands, Marks & Sands,* on brief), for the plaintiffs in error.

*George B. Little (Angus H. Macaulay, Jr.; Denny, Valentine & Davenport,* on brief), for the defendant in error.

Eggleston, C. J., delivered the opinion of the court.

Hajoca Corporation, hereinafter called Hajoca or the plaintiff, filed suit in the court below against Frank Paulson, trading as Peninsula Construction Company, and Aetna Casualty and Surety Company, hereinafter called the defendants, to recover the price of certain materials furnished by Hajoca and used in the construction of a school building in New Kent county which Paulson as general contractor had agreed to build for the local school board. The action was based on a performance and payment bond given pursuant to Code, § 11-23, as amended, by Paulson as principal and Aetna as surety, guaranteeing the faithful performance of the construction contract and the payment to those persons who had furnished labor or materials on the project. There was a trial by a jury which resulted in a verdict and judgment for the full amount claimed. The defendants have appealed claiming that the verdict and judgment are contrary to the law and the evidence and that the lower court erred in its ruling on the instructions.

The underlying facts are these: In December, 1957, Paulson entered into a contract with the School Board of New Kent county to construct an elementary school building. As required by Code, § 11-23, as amended, Paulson as principal and Aetna as surety executed a performance and payment bond in the sum of $174,400, conditioned as stated above.

Paulson subcontracted the plumbing and heating work to Burlee Rowe who had submitted a bid of $25,000 therefor. Under his contract with Rowe, Paulson was obligated to make monthly payments

based upon 90% of the value of all labor or materials furnished. These payments were to be made on the 10th of the month following that in which the labor or materials were furnished.

Rowe purchased from Hajoca materials of the invoice value of $15,885.33, all of which were used in the construction of the building. He purchased from other supply houses materials of the approximate cost of $12,000. Being unable to give a performance bond, Rowe sought credit of Hajoca for the materials to be furnished by it. Paul W. Folse, the credit manager of Hajoca's Richmond branch, agreed to extend credit to Rowe on a 30-day basis with a discount of 2% per month if paid prior to the 10th of the following month, provided Rowe would have Paulson make checks for the monthly amounts due Rowe payable jointly to Rowe and Hajoca. From each of these checks Hajoca was to deduct the amount of its bill for the preceding month and pay the balance to Rowe.

During the course of the construction of the building Paulson issued five such joint checks totaling $15,245.68. Pursuant to his agreement with Folse, Rowe took each of these monthly checks to Hajoca which deducted therefrom the amount in which Rowe was then indebted to Hajoca and "refunded" the balance to Rowe. The last of these joint checks was for the sum of $3,000 which was $405.58 less than the amount which Rowe owed Hajoca for the cost of materials furnished during the previous month.

Hajoca furnished to Rowe other materials the invoice value of which added to the deficit of $405.58 left Rowe indebted to Hajoca in the sum of $5,608.21, the amount for which Hajoca, the plaintiff, has recovered a judgment against the defendants, Paulson and his surety. In the meantime the total of the "refunds" which Hajoca had made to Rowe out of the proceeds of the joint checks had amounted to $5,208.71. For various reasons which will be related, the defendants claim that these "refunds" were illegal and improper, and that the total amount thereof should have been credited on the balance which Hajoca claimed was due to it by Rowe, and for which the defendants have been held liable.

First, the defendants say, there was an agreement, express or implied, between Folse, Hajoca's credit manager, and Paulson that Hajoca would retain all of the proceeds of these joint checks and apply them to the payment of Hajoca's ultimate bill against Rowe, and that having not lived up to this agreement Hajoca released *pro tanto* its claim against the defendants under the bond.

The first ready answer to this argument is that no such contention was advanced in the lower court. Neither in the grounds of defense, motions to strike, nor requests for instructions did the defendants assert that there had been such an agreement. Therefore, it is too late to make that claim for the first time in this court.

■ But aside from this, there is no evidence to sustain a finding of any such agreement. Folse testified that the purpose of his insisting on the joint check arrangement was that his company might secure the payment of its bills for materials furnished Rowe by deducting from the proceeds of each check the amount due for the materials furnished during the previous month. The strongest evidence cited by the defendants to sustain their claim that Folse agreed with Paulson to retain all of the proceeds of these joint checks is the testimony of Paulson himself. Paulson did not testify that he directed Folse to have Hajoca retain the full proceeds of these joint checks and that Folse agreed that this would be done. What the defendants rely upon is Paulson's testimony that Folse said that he wanted the joint check arrangement "so he could secure himself and make sure he got all of the money for all of the materials they were going to supply on the job." But this is far from showing, as the defendants claim, that Folse agreed to retain the full amount of the proceeds of each of these joint checks as security for Rowe's future indebtedness to Hajoca. On the contrary, it is quite in accord with Folse's testimony that the joint check arrangement was to insure the collection of Rowe's full account as the bills were incurred and became due, from time to time.

Moreover, Rowe testified that had Hajoca withheld all of the proceeds of these joint checks he could not have carried on his work on the building for more than "thirty days." Paulson knew of Rowe's financial condition because Rowe had told him that he lacked sufficient capital to procure a performance bond. Folse was also aware of this. It is absurd to say, then, that Paulson and Folse would have made an arrangement which they must have known would have put Rowe out of business and caused him to default in the performance of his contract.

■ What we have said answers the contention of the defendants that since Folse led Paulson to believe that Hajoca would withhold the full proceeds of these checks, Hajoca is estopped to deny that it was its obligation to do so.

Aside from the fact that no estoppel was pleaded or asserted as a

defense in the lower court, there is no evidence that in this manner Folse misled Paulson to his prejudice.

■ The final contention of the defendants is that even in the absence of any agreement, express or implied, between Paulson and Hajoca, it was nevertheless the duty of Hajoca to withhold the full amount of the proceeds of these checks as security for the payment of its entire bill against Rowe. This contention might have been sound had Paulson directed Hajoca to proceed in this way. But he gave no such direction.

It will be observed that the proceeds of each of these joint checks represented money due by Paulson to Rowe. The joint check arrangement was not initiated by Paulson but by Rowe and Folse. This arrangement was conditioned upon Hajoca's assurance that it would retain in each instance the amount of Rowe's past due account to it and pay him the balance. Under that agreement Hajoca had no right without Rowe's consent to withhold more than the amount of that matured indebtedness.

Consequently, on the evidence before it the lower court properly instructed the jury that "any failure by the plaintiff [Hajoca] to withhold additional funds from such joint checks without authority from" Rowe, had "no effect whatsoever upon the claim of the plaintiff against both defendants."

On the whole we find the judgment to be plainly right and it is

*Affirmed.*